In re Odell Lynard SANDERS, Debtor.

DAVID DORSEY DISTRIBUTING,
INCORPORATED, Appellant,

v.

Odell Lynard SANDERS, Appellee.

No. 93–C–246W.

United States District Court,
D. Utah, C.D.

July 8, 1993.

Chris L. Schmutz, Chris L. Schmutz, P.C., Salt Lake City, Utah, for appellant.

William Thomas Thurman, McKay, Burton & Thurman, Salt Lake City, Utah, for appellee.

## MEMORANDUM DECISION AND ORDER

WINDER, Chief Judge.

This matter is before the court on appellant David Dorsey Distributing, Inc.'s ("Dorsey") appeal from the United States Bankruptcy Court's Order Granting Debtor's Motion to Avoid Dorsey's Lien. This court held a hearing on this appeal on June 8, 1993. Chris L. Schmutz represented Dorsey, and William Thomas Thurman represented debtor Odell Lynard Sanders ("Debtor"). Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law as it relates to the facts of this matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This appeal arises from the bankruptcy court's Order and Amended Order Granting Debtor's Motion to Avoid Lien of Dorsey Distributing. The facts in this case are not in dispute.[1] On December 19, 1990, Dorsey obtained a $92,687.44 judgment (the "Judgment") against the Debtor in the Third Judicial District Court, Salt Lake County, State of Utah. On December 21, 1990, Dorsey filed an abstract of the Judgment with the clerk of the court in Davis County, State of Utah. Both prior to and after the time the abstract was filed, the

---

1. The Debtor agreed that Dorsey fairly stated the facts involved in this case. *See* Appellee's Brief at 1. Thus, the facts generally have been taken from the Statement of the Case in Dorsey's Brief.

Debtor and his wife owned as joint tenants a residence and surrounding realty in Kaysville, Davis County, Utah (the "Real Property"). The Judgment became a valid, enforceable lien against the Debtor's Real Property on December 21, 1990. The Debtor filed his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code") on June 15, 1992. On that day, the Debtor also filed a motion under § 522(f) of the Code, seeking to avoid the Judgment lien.

At the December 21, 1992 hearing on the motion, the parties stipulated that the market value of the Real Property is $90,000. The undisputed evidence at the hearing showed that there were three consensual liens against the Real Property, and that their combined value was $64,597 at the time of the Debtor's bankruptcy petition. The evidence also showed that the Debtor was entitled to a $13,000 homestead exemption under Utah's Exemption Act.[2]

The bankruptcy court determined that the value of the Real Property ($90,000) minus the value of the consensual liens at the time of filing ($64,597) left an equity of $25,403. Half of this equity, $12,701.50, belonged to the Debtor, and the other half belonged to his wife. Because the available equity at the time of the filing was less than the amount of the Debtor's homestead exemption ($13,000), the bankruptcy court concluded that there was no equity to which the lien could attach, and the lien should be avoided in its entirety under § 522(f)(1).

In its appeal, Dorsey argues that § 522(f) does not authorize the avoidance of the entire $92,000 judgment lien. First, Dorsey maintains the bankruptcy court erred in granting the Debtor's motion because

the plain meaning of § 522(f) authorizes the avoidance of judgment liens only to the extent necessary to preserve the Debtor's exemptions. Second, Dorsey argues that under Utah law a judgment lien cannot impair a homestead exemption; consequently, the bankruptcy court should not have granted the Debtor's motion. Dorsey contends that even if there was no equity to which the lien could attach at the time the Debtor's bankruptcy petition was filed, it is likely that equity will accrue in the future as the market value of the Real Property increases and the consensual liens are paid down. Thus, Dorsey asserts that it is entitled to the benefit of that future equity increase.

On the other hand, the Debtor maintains that Dorsey's judgment lien impaired his homestead exemption and was properly avoided under § 522(f). He alleges that allowing the unsecured portion of a judicial lien to remain as a charge against his exempt property would impair his exemption and his right to a fresh start.

## STANDARD OF APPELLATE REVIEW

■ Because this appeal involves only the bankruptcy court's legal determinations, and not its factual conclusions, this court's review is *de novo*. *Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685 (10th Cir.1988); *First Bank of Colo. Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987).

## DISCUSSION

The issue presented in this appeal is whether the bankruptcy court erred in granting Debtor's Motion to Avoid Lien of Dorsey Distributing. Under § 522(b)[3] of

---

2. Utah Code Ann. §§ 78–23–1 to –15 (1992).

3. Section 522(b) provides:
   (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection....
   (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

   (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and
   (B) any interest in property in which the debtor had, immediately before the commencement of the case, and interest as a tenant in the

the Code, a debtor may exempt certain property from the bankruptcy estate and retain this property as part of the "fresh start" following bankruptcy. Section 522(b) allows a debtor to choose either the list of federal exemptions provided in § 522(d) or the exemptions provided by the state in which the debtor has been domiciled for the 180 days immediately preceding the filing of the petition of bankruptcy. 11 U.S.C.A. § 522(b)(1) & (2)(A) (West 1993). Section 522(b)(1) also permits each state to opt out of the federally structured exemptions and entirely replace the federal exemptions with a state law program of exemptions. *Id.* § 522(b)(1).

If the otherwise exempt property is encumbered by liens, however, the debtor may not receive the benefit of his exemptions as the liens will survive bankruptcy. The property instead will be applied to satisfy the claims of the lien creditors. *See In re Cerniglia,* 137 B.R. 722, 723 (Bankr. S.D.Ill.1992). As an additional protection for a debtor's fresh start, § 522(f) enables the debtor to avoid certain liens that encumber otherwise exempt property so that the debtor may maximize the allowable bankruptcy exemptions. Section 522(f) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor

in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—

(1) a judicial lien[.]

11 U.S.C.A. § 522(f)(1) (West 1993). To determine whether § 522(f) applies in a given situation, courts must determine whether the lien "impairs an exemption to which [the debtor] would have been entitled but for the lien itself." *Owen v. Owen,* —— U.S. ——, 111 S.Ct. 1833, 1836–37, 114 L.Ed.2d 350 (1991).

Thus, the first step in the analysis is to determine whether the Debtor is entitled to an exemption or otherwise would be in the absence of a lien. If so, the next task is to determine the extent to which Dorsey's lien may be avoided under § 522(f)(1) if it impairs the exemption. The final step in this case is to ascertain whether Dorsey's lien did, in fact, impair the Debtor's exemption.

■ In the case at hand, neither party disputes that the Debtor is entitled to a homestead exemption[4] in the amount of $12,701.50.[5] Therefore, the next task is to determine the extent to which a lien may be avoided under § 522(f)(1) if it impairs the exemption.[6] Courts that have considered § 522(f)(1) lien avoidance have reached different conclusions concerning the extent to which a judicial lien may be avoided

---

entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

**4.** Like many states, Utah has elected to "opt out" of the federal list of exemptions and has restricted its residents to those exemptions identified in the Utah Exemptions Act. *See* Utah Code Ann. § 78–23–15 (1992); *see generally In re Neiheisel,* 32 B.R. 146 *passim* (Bankr.D.Utah 1983) (holding Utah's exemptions constitutional and providing exhaustive review of legislative history underlying Utah and federal exemptions). The Utah Constitution mandates that a homestead exemption be granted. *See* Utah Const. art. XXII, § 1. Accordingly, Utah's homestead exemption is codified at section 78–23–3 in the Utah Exemptions Act, Utah Code Ann. §§ 78–23–1 to –15 (1992). The homestead exemption provides:

(1) A homestead consisting of property in this state shall be exempt in an amount not exceeding $8,000 in value for a head of family,

$2000 in value for a spouse, and $500 in value for each other dependent. A homestead may be claimed in either or both of the following:

(a) one or more parcels of real property together with appurtenances and improvements;

(b) a mobile home in which the claimant resides.

*Id.* § 78–23–3(1).

**5.** The Debtor is entitled to a $13,000 maximum homestead exemption, but his equity in the home ($12,701.50) caps the amount of his available exemption.

**6.** It is well settled that "while state law governs the question of the debtors' exemption ..., federal law determines the availability of lien avoidance under § 522(f)." *Heape v. Citadel Bank of Independence (In re Heape),* 886 F.2d 280, 282 (10th Cir.1989); *see also Owen,* —— U.S. at ——, 111 S.Ct. at 1838; *Aetna Fin. Co. v. Leonard (In re Leonard),* 866 F.2d 335, 338 (10th Cir.1989).

because it impairs a debtor's homestead exemption. One line of cases holds that the entire lien above the debtor's equity must be avoided if the debtor is to obtain the benefit of his exemption and a fresh start. *See Harris v. Herman, (In re Herman)*, 120 B.R. 127, 131–32 (9th Cir. BAP 1990); *Galvan v. Galvan (In re Galvan)*, 110 B.R. 446, 451 (9th Cir. BAP 1990); *Robinson v. Robinson (In re Robinson)* 114 B.R. 716, 720 (D.Colo.1990); *Dewyer v. Union Bank (In re Dewyer)*, 11 B.R. 551, 551–52 (Bankr.W.D.Pa.1981). The functional effect of this position is that any equity built up as existing mortgages are paid following bankruptcy and any postpetition appreciation in the value of the property accrues to the benefit of the debtor rather than the judicial lienholder.

By contrast, the majority of cases conclude that the plain language of § 522(f) permits avoidance of the lien only in the amount of the debtor's exemption. *See Heape v. Citadel Bank of Independence (In re Heape)* 886 F.2d 280, 284 n. 5 (10th Cir.1989) (dictum); *City Nat'l Bank v. Chabot (In re Chabot)*, 992 F.2d 891, 895 (9th Cir.1993), *In re Gonzalez*, 149 B.R. 9, 10 (Bankr.D.Mass.1993); *In re Prestegaard* 139 B.R. 117, 119–20 (Bankr. S.D.N.Y.1992); *In re Sanglier*, 124 B.R. 511, 514 (Bankr.E.D.Mich.1991). The effect of this position is that the unavoided portion of the lien would survive bankruptcy and would attach to any equity that accumulates above the debtor's homestead amount. In this way, the judicial lienholder, rather than the debtor, partakes of any increase in the property's value following bankruptcy.

In resolving the extent to which a judicial lien may be avoided under § 522(f)(1), the statute should be interpreted according to its plain meaning. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Section 522(f) provides that a judicial lien may be avoided only *"to the extent that* [it] impairs an exemption to which the debtor would have been entitled...." 11 U.S.C.A. § 522(f) (West 1993) (emphasis added). This limiting language necessarily implies that, to the extent that a judicial lien does not impair a debtor's exemption, the lien may not be avoided. *See In re Sanglier*, 124 B.R. at 514. In other words, "an exemption is not impaired unless its amount is diminished in value." *In re Chabot*, 992 F.2d at 895; *see also In re Gonzalez*, 149 B.R. at 10 (declaring "the great majority of courts that have faced the question" have concluded that impairment of debtor's exemption cannot extend beyond amount of exemption); *In re Prestegaard*, 139 B.R. at 119 (stating that judicial lien larger in amount than homestead exemption does not impair exemption if exempt portion is carved out of lien); *In re Cerniglia*, 137 B.R. at 725 (concluding effect of § 522(f)(1) is to allow avoidance of liens in the specific amount of debtor's exemption); *Wachovia Bank & Trust Co. v. Opperman (In re Opperman)*, 943 F.2d 441, 443–44 (4th Cir.1991) (dictum) (determining that only portion of lien that actually interferes with debtor's homestead exemption may be avoided). *See generally* 3 Collier on Bankruptcy ¶ 522.29[1], at 522–96 (Lawrence P. King ed., 15th ed. 1993) ("When the debtor avoids the fixing of a lien, pursuant to section 522(f), however, the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor."). As explained by the court in *In re Prestegaard:*

If the real estate is sold by the Chapter 7 trustee for a sum not more than the mortgages and the homestead exemption, it would follow that the judicial lien would evaporate as a secured claim due to the forces of the market place. However, if the property is not sold, or the trustee abandons the property to the debtor, the existence of the judicial lien, to the extent it exceeds the amount by which it impairs the debtor's exemption, will continue to have significance. There is no compelling reason why the debtor should be permitted to avoid the lien to its full extent.

139 B.R. at 119. The *Prestegaard* court concluded that "[t]he better reasoned approach is to protect the debtor's homestead exemption to the extent of the express limitation set forth in 11 U.S.C. § 522(f)(1) and not to create an additional avoidance power with respect to judicial liens that do not actually interfere with the debtor's homestead exemption." *Id.*

Additionally, the Tenth Circuit has addressed the meaning of § 522(f) in dictum and has recognized the limiting effect of the language. In *In re Heape*, the court determined that the debtors' breeding livestock, which was exempt to $5,000 under the Kansas exemption statute, was also within the scope of the lien avoidance provision, § 522(f)(2)(B). The court noted that "[b]ecause § 522(f) allows the debtors to avoid this lien only 'to the extent' it impairs their exemption, no more than $5000 of this lien can be avoided." 886 F.2d at 284.

■ In the present case, to interpret § 522(f)(1) in the manner the bankruptcy court has done—avoiding the entire $92,000 judicial lien—is to "grant the debtor not merely the benefit of his exemption in the homestead property but also all the benefits of ownership beyond the exemption amount, including the right to any increase in value caused by subsequent events." *In re Cerniglia*, 137 B.R. at 725; *see also In re Chabot*, 992 F.2d at 895 ("There is no

basis for the proposition that the homestead exemption provides ownership benefits, such as the right to appreciation, beyond the set amount."). Although there is some support for the bankruptcy court's decision, this court is convinced that the bankruptcy court's ruling was an incorrect interpretation of § 522(f)(1). This court does not agree that Dorsey's entire lien should be avoided. Under a plain reading of § 522(f)(1), a debtor's exemption is impaired only to the extent a judicial lien attaches to the otherwise exempt property interest and prevents the debtor from getting the benefit of his exemption. In harmony with the reasoning of *Cerniglia* and *Chabot, supra,* to avoid the entire lien in this case would bestow a windfall on the Debtor, a resolution that lacks any justification under the language of § 522(f). Accordingly, this court finds that § 522(f)(1) does not permit the Debtor to avoid Dorsey's judicial lien beyond the Debtor's $12,701.50 exemption, assuming that the lien impairs the exemption.[7]

Having determined that (1) the Debtor in this case is entitled to a homestead exemption of $12,701.50 and (2) § 522(f)(1) permits lien avoidance only to the extent the Debtor's exemption is impaired, the final step in the analysis is to ascertain whether Dorsey's lien did, in fact, impair the Debt-

---

**7.** Dorsey has also highlighted the fact that many of the cases upon which the Debtor relies, *e.g., In re Herman,* 120 B.R. at 131, *In re Hermansen,* 84 B.R. 729, 733 (Bankr.D.Colo.1988), avoid the unsecured portion of a lien utilizing a § 506(d) strip-down approach to extend the reach of § 522(f). Dorsey argues that this approach is no longer valid after *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *Dewsnup* held that one of the fundamental rules of pre-Code bankruptcy law was to allow valid, perfected liens to pass through bankruptcy unaffected. *Id.* at ——, 112 S.Ct. at 778. The Court concluded that the portion of a valid lien determined to be unsecured under § 506(a) could not be avoided under § 506(d). *Id.* at ——, 112 S.Ct. at 779. Consequently, postpetition increases in value accrue to the benefit of the lienholder, not the debtor. *Id.* at ——, 112 S.Ct. at 778. Dorsey argues that the reasoning in *Dewsnup* applies to § 522(f) as well as to section 506(d) and therefore, § 522(f) does not authorize avoidance of judgment liens above the amount necessary to protect the debtor's exemption.

Conversely, the Debtor maintains that *Dewsnup* addresses an issue entirely different from the case at bar and holds only that a Chapter 7 debtor, in a case in which the real property has been abandoned by the trustee, cannot use § 506(d) to strip down a consensual lienholder's interest and redeem the property.

Courts are split on whether the *Dewsnup* reasoning is applicable to § 522(f). *Compare In re Cerniglia,* 137 B.R. at 725 (relying, in part, upon *Dewsnup* to conclude that lien cannot be avoided beyond extent of exemption) *with In re Prestegaard,* 139 B.R. at 120 (finding that lien cannot be avoided beyond extent of exemption, but indicating that *Dewsnup* does not apply to § 522(f) motions).

Because resolution of this appeal is based on the plain meaning of § 522(f), and is therefore not dependent upon whether *Dewsnup* controls this analysis, this court expresses no opinion on the applicability of *Dewsnup* in § 522(f) motions.

or's exemption. Dorsey argues that based on the express statutory language of the Utah homestead exemption, a homestead cannot be impaired. The Utah homestead exemption states that, except upon obligations that are not applicable to this case, "[a] homestead shall be exempt from *judicial lien* and from levy, execution, or forced sale." Utah Code Ann. § 78–23–3(2) (1992) (emphasis supplied).[8] Thus, Utah's homestead exemption performs the same function as § 522(f)(1).

■ As discussed above, debtors may resort to § 522(f) when a lien "impairs an exemption to which [the debtor] would have been entitled but for the lien itself." *Owen*, ── U.S. at ──, 111 S.Ct. at 1836–37. Accordingly, § 522(f) operates to avoid liens on property that would be exempt if not encumbered by a lien. Under Utah law, a homestead interest is automatically exempt from judicial liens, rendering it unnecessary to eliminate the lien to enjoy the exemption.

For example, in *In re Williamson*, 43 B.R. 813 (Bankr.D.Utah 1984), the court was asked to determine the priority of certain liens and encumbrances against proceeds of the sale of bankruptcy estate property. The court determined that "[b]y virtue of Utah's exemption statute, debtor's

homestead exemption *takes priority over all the other encumbrances* except the consensual security interests in the property...." *Id.* at 832 (emphasis supplied). The *Williamson* court concluded that "[w]hat the Court requires in this case is that debtor's homestead exemption allowance of $8,000.00 be paid before all other liens and encumbrances," except the two consensual security interests. *Id.; see also Sanders v. Cassity*, 586 P.2d 423, 426 (Utah 1978) (construing repealed but similar homestead exemption statute and noting that homestead is immune from judgment lien, execution, or forced sale). Thus, a homestead exemption in Utah is never impaired by a judicial lien because the homestead exemption has priority over judicial liens.

Other courts have similarly construed their homestead exemption statutes. For example, in *In re Fry*, 83 B.R. 778 (Bankr. D.Colo.1988), the court held that "[u]nder Colorado law, the judgment lien can never impair the debtor's homestead exemption simply because the judgment lien never attaches to that exempt property." *Id.* at 779. Therefore, the court concluded, § 522(f) "is superfluous in connection with the homestead exemption."[9] *Id.* Likewise, in *In re Cerniglia*, the court noted that in Illinois a judgment lien does not

---

**8.** The provision further provides:
(5) When a homestead is conveyed by the owner of the property the conveyance shall not subject the property to any lien to which it would not be subject in the hands of the owner; and the proceeds of any sale, to the amount of the exemption existing at the time of sale, shall be exempt from levy, execution, or other process for one year after the receipt of the proceeds by the person entitled to the exemption.
Utah Code Ann. § 78–23–3(5) (1992).

**9.** As the Debtor points out, other Colorado bankruptcy court decisions have disagreed with the *Fry* rationale, and have stated that even though a judicial lien does not attach to a debtor's exempt homestead interest in Colorado, the existence of such a lien potentially impairs the debtor's fresh start. For example, the courts in *In re Packer*, 101 B.R. 651 (Bankr.D.Colo.1989), and *In re Hermansen*, 84 B.R. 729 (Bankr. D.Colo.1988), concluded that a debtor must be allowed to proceed under § 522(f)(1) to confirm or legally document avoidance of a lien that appears to impair the homestead exemption be-

cause failure to do so may leave the debtor's title to real property clouded, lead to future litigation, prevent a closing, preclude title insurance, require posting of a bond, or "otherwise impair or impede a debtor's right to deal with his real property in a free and unfettered manner." *Packer*, 101 B.R. at 653; *see also Hermansen*, 84 B.R. at 733. The district court adopted the *Packer* and *Hermansen* reasoning in *In re Duden*, 102 B.R. 797 (D.Colo.1989) and *In re Robinson*, 114 B.R. 716, 720 (D.Colo.1990). This court, however, agrees with the *Cerniglia* court that "[i]t is not the purpose of § 522(f)(1) to 'confirm' or 'document' the absence of liens on exempt property but to effect the removal of liens affixed to the debtor's interest so that property which would otherwise be exempt may pass into the bankruptcy estate to be claimed as exempt." *Cerniglia*, 137 B.R. at 727.

These Colorado opinions contemplate complete avoidance of judicial liens under § 522(f)(1). As discussed above, § 522(f)(1) does not allow the debtor to avoid judicial liens that remain as a charge on his property above the exemption amount.

attach to the debtor's homestead interest in the property; rather, it attaches only to the debtor's property that exceeds the amount allowed by statute as a homestead. 137 B.R. at 726. The court explained that "there is no necessity for the debtors to seek avoidance of [the judicial lien] under 522(f)(1), as their exemption rights will be preserved to them following bankruptcy in any event." *Id.* Having previously determined that § 522(f)(1) does not allow the debtors to avoid the judgment lien entirely, but merely in the specific amount of their exemption, the *Cerniglia* court concluded that the "debtors would gain nothing by the use of § 522(f)(1) beyond the exemption rights afforded them under state law. Since the judgment lien ... did not attach to the debtor's homestead interest, there is no impairment of the debtors' exemption and no encumbering lien to be avoided." *Id.* at 726–27. Additionally, the court in *In re Greenhill*, 62 B.R. 1 (S.D.Ohio 1984) reached the same conclusion, finding that under Ohio law a judicial lien does not impair a debtor's claim of exemption "because a debtor's exemption will prevail over [a creditor's] judgment lien and should be recognized and paid ahead of that lien from the proceeds of any future judicial sale of the debtor's real estate." *Id.* at 2. In fact, one court, in evaluating the extent to which a judicial lien could be avoided under 522(f)(1), concluded that the homestead exemption "must fall in place after the consensual liens but before the judicial liens in order to have value. In this manner, the judicial liens do not impair the exemption and these lienholder will benefit from any appreciation in the property." *In re D'Amelio*, 142 B.R. 8, 10 (Bankr.D.Mass 1992). Because the Utah exemption law prioritizes the homestead interest above judicial liens, it mirrors the effect of § 522(f)(1).

From this examination of Utah exemption law and persuasive law from other jurisdictions, it is evident that there is no reason for the Debtor to seek avoidance of

Dorsey's lien under § 522(f)(1) because the Debtor's exemption rights will be preserved following bankruptcy in any event.[10] This court's ruling that § 522(f)(1) lien avoidance is superfluous to the Debtor in this case does not deny him any benefits afforded by the Bankruptcy Code; it merely leaves undisturbed the protections already provided under Utah exemption law. The court therefore finds that Dorsey's judicial lien does not impair the Debtor's homestead exemption because, under Utah law, the homestead exemption is immune from judicial liens.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED:

That the bankruptcy court's ruling that Dorsey's lien should be avoided in its entirety under § 522(f)(1) is reversed and the matter is remanded to the Bankruptcy Court for the District of Utah for further proceedings consistent with this opinion.

---

**10.** The United States Supreme Court has rejected state law attempts to define exempt property in a way that would override the lien avoidance provision of § 522(f)(1). *See Owen,* —— U.S. at

——, 111 S.Ct. at 1836–37. However, Utah's exemption is consistent with the purpose and effect of § 522(f)(1).